## Foreign Casualty Insurance Company Tax

UMSTED, Deputy Attorney General, June 23, 1950. —Under date of June 20, 1950, you ask this department for an interpretation of the Act of May 27, 1949, P. L. 1901, which amends the Act of May 12, 1943, P. L. 259, 72 PS §2263.1, and specifically you seek advice upon the following questions:

1. Of the amount of the tax upon premiums paid by foreign casualty insurance companies and received in the calendar year 1949, one cent of the tax was distributed to municipalities and to the State Employes' Retirement Fund for State police pension and retirement purposes. The amount representing the other one cent of tax has not been distributed. Under the provisions of Act No. 567, 1949 session, should or should not such amount be distributed?

2. Of the amount of tax collected in the calendar year 1950, an amount representing one cent of the tax has been certified to the Auditor General for distribution to the municipalities and to the State Employes' Retirement Fund. This was done on June 9, 1950. The remainder of the amount, representing one cent of the tax, has not been certified to the Auditor General for distribution. Under the provisions of Act No. 567, 1949 session, should or should not this amount be certified for distribution?

We have ascertained from your office that there was collected by the Department of Revenue as tax on premiums on insurance written in Pennsylvania by foreign casualty companies in the year 1949 the sum of $3,186,044.73 and to date in 1950, the sum of $3,476,077.67; that one half of the tax collected in 1949 has been distributed to police pension funds under the Act of 1943, and that approximately one half of the amount of the tax collected to date in 1950 is about to be distributed.

The amendatory provisions of the Act of May 27, 1949, P. L. 1901, read as follows:

"Section 1. On and after the first day of January, one thousand nine hundred and forty-nine and annually thereafter, there shall be paid by the State Treasurer to the treasurers of the several municipalities within the Commonwealth, and to the State Employes' Retirement Fund for State police pension and retirement purposes, the entire amount received from the two per centum tax paid upon premiums by foreign casualty insurance companies. The amounts to be distributed shall be allocated in accordance with the following formulae: . . .

"Section 2. The provisions of this amendment shall apply to all moneys received from aforesaid tax in the year one thousand nine hundred forty-nine and thereafter.

"Section 3. The additional moneys required to be paid out of the State Treasury in compliance with this amendment on account of said tax moneys received during the year one thousand nine hundred forty-nine shall be paid as herein provided only if there are unexpended and unenecumbered moneys in the General Fund at the end of the fiscal year of one thousand nine hundred forty-nine sufficient to make such payments. The Governor shall, with the advice of his fiscal officers, make the final determination as to the availability of such moneys.

"Section 4. All acts or parts of acts inconsistent with the provisions of this act are hereby repealed."

Section 1, quoted above, expresses in unequivocal terms the intention of the legislature that the entire amount received from the two percent tax paid on premiums by foreign casualty insurance companies shall be distributed to the State Employes' Retirement Fund for State police pension and retirement purposes and to municipal treasurers for police retirement funds under the formula set forth in the Act of May 12, 1943, as amended by the Act of April 6,

1945, P. L. 160. Section 2 of the 1949 amendment reaffirms that purpose.

Section 3, however, places a limitation upon the distribution of one half of the entire amount received from the said two percent tax during the year 1949, but does not extend that limitation to any portion of the amounts received from it in the years subsequent to 1949.

In these circumstances it is abundantly clear that the distribution of the entire fund realized from the two percent tax upon premiums paid by foreign casualty insurance companies, during the year 1950 and in subsequent years, shall be paid in the proportions provided, and to the beneficiaries designated by the Act of May 12, 1943, as amended by the Act of April 6, 1945.

In this connection, it is to be noted that the State Treasurer has prepared to distribute from funds of the foregoing character collected in the year 1950, about one half or $1,699,187.36 and retain a like amount which will, in all probability, be increased during the year. This action on his part is undoubtedly justified by his fair and reasonable desire to disburse as soon as possible for the benefit of police pension funds sums which otherwise would remain dormant in the State Treasury allocated to that purpose.

It is certainly not incumbent upon the State Treasurer to make any distribution of the funds collected during 1950 until the calendar year has expired. The amendatory act clearly states: "On and after the first day of January, one thousand nine hundred and forty-nine and annually thereafter, there shall be paid by the State Treasurer, etc."

The State Treasurer may not be compelled to make any, or any more partial distribution of the 1950 collections this year. On the other hand, if he is so disposed, he may, at this time, or at any time during

this calendar year, make one or more partial distributions from the 1950 funds on deposit. Obviously, he cannot distribute all of the two percent tax collected in 1950 until after his books are closed for that year.

If there has been an intimation that the State Treasurer, either on his own initiative or upon other advice, has withheld foreign casualty premium tax moneys collected in 1950 from their ultimate destination, it is entirely erroneous. The fact is, the State Treasurer, although not legally obligated so to do, has undertaken to make partial distribution where with less labor and at less expense to the Commonwealth he could wait to make but one full distribution of the funds on hand at the termination of the year.

Insofar as the amount received in 1949 from the two percent tax paid upon premiums by foreign casualty insurance companies is concerned, it is apparent that the legislature intended that one one half, and not all of this, should be distributed under the 1943 act, as amended, unless "unexpended and unencumbered moneys in the General Fund at the end of the fiscal year of one thousand nine hundred forty-nine [are] sufficient to make such payments". This brings us to the question of what is meant by the use of the words "end of the fiscal year of one thousand nine hundred forty-nine". For an answer we must look back to section 1 of the 1949 amendment which provides that the tax collected in 1949 is to be distributed *annually*. If all rather than one half of the 1949 tax is to be distributed, the fact of whether there is sufficient unexpended and unencumbered moneys in the general fund is impossible of ascertainment during the calendar year 1949 while collections are still in process. Consequently, it must be concluded that the legislature did not intend by the use of the words "at the end of the fiscal year of one thousand nine hundred forty-nine", to mean the fiscal year ending

May 31, 1949, which incidentally was the end of a fiscal biennium.

Commonwealth commitments extend over the entire biennium for which the legislature makes general appropriations. Revenues are only estimated for the same period. To ascertain then, whether there are unexpended or unencumbered moneys in the general fund before *actual receipts* can be balanced against *actual expenditures*, is impossible. The first day on which actual figures of receipts and disbursements are available, is the last day of any biennium. Since the legislature in the language it used, as demonstrated above, did not fix May 31, 1949, as the date for determining the sufficiency of unexpended and unencumbered funds as a criterion for the payment of the whole tax, and since May 31, 1950, the end of a fiscal year, but not the end of a biennium, cannot, therefore, be used, we must conclude that the legislature could only have intended the words "fiscal year" in the sense of "fiscal biennium". Thus, the question of whether the police pension funds are to receive all of the said tax moneys collected in 1949, or only one half of them, must await until the fiscal condition of the Commonwealth is established at the end of the biennium, commencing June 1, 1949, and ending May 31, 1951.

It is our opinion and you are accordingly advised:

1. Only one half of the amount received from the two percent tax paid on premiums by foreign casualty insurance companies, during the calendar year 1949, may be paid to the treasurers of the several municipalities and to the State Employes' Retirement Fund for the State police pension and retirement purposes, in accordance with the Act of May 12, 1943, P. L. 259, as amended, until after May 31, 1951, when it can be ascertained whether there are unexpended or unencumbered moneys in the general fund. If so,

the balance of the tax moneys remaining in the general fund may be paid. If not, they may not.

2. The State Treasurer is required to pay the entire amount received from the two percent tax paid upon premiums by foreign casualty insurance companies, during the calendar year 1950, to the State Employes' Retirement Fund for State police pension and retirement purposes and to the treasurers of the several municipalities for police pension fund purposes, in accordance with the provisions of the Act of May 12, 1943, P. L. 259, as amended, after all of those taxes have been collected, that is, immediately after January 1, 1951. He may, however, if he is so disposed and during the year 1950, make partial distributions.